IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL ACTION NO. 1:25-cr-00520-MLB-RDC |
| SHARON HENDERSON, | |
| Defendant. | |

**FINAL REPORT AND RECOMMENDATON**

Pending before this Court is Defendant Sharon Henderson's Motion to Dismiss the Indictment on jurisdictional grounds. [Doc. 21]. In the alternative, she moves for discovery and an evidentiary hearing to support her claim that she's the victim of unlawful selective prosecution. [*Id.* at 3]. The Government filed its brief opposing this motion on March 20, 2026, [Doc. 26]. Ms. Henderson filed her reply brief on March 25, 2026, [Doc. 27]. Her motion is now ripe for judicial review.

After careful review of Defendant's pleadings, the Government's response and the applicable law, the undersigned **RECOMMENDS** that Defendant's motion to Dismiss be **DENIED**. This Court also **RECOMMENDS** that her request for limited

discovery and an evidentiary hearing in support of the Selective Prosecution claim be **DENIED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Defendant Henderson is charged in a twelve-count Indictment with offenses alleging submission of fraudulent applications to obtain emergency financial assistance through the Federal Pandemic Unemployment Assistance Program ("PUA"), a program administered by the Georgia Department of Labor ("GDOL"). [Doc. 1]. According to the Government, she engaged in the theft of government funds by knowingly submitting false information related to her employment prior to the on-set of the COVID-19 pandemic. [*Id.* at 5-6]. Counts One and Two allege that she "did knowingly and willfully embezzle, steal, purloin, and convert to her own use and the use of another, money and things of value of the United States, namely, funds administered by the U.S. Department of Labor in the form of unemployment benefits, which funds [she] was not entitled to receive" in violation of 18 U.S.C. §641. [*Id.*]. Counts Three – Twelve allege violations of 18 U.S.C. §1001 that occurred on ten occasions when she "knowingly and willfully [made] false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States on

internet certifications to obtain funds administered by the U.S. Department of Labor in the form of unemployment benefits." [Doc. 1 at 6].

The Indictment also states that although the Defendant claimed her place of employment was closed "as a direct result of the COVID-19 public health emergency" and that she was unable to travel to her employer because of the quarantine imposed during the pandemic, those statements were false because she knew "then and there [that] she had voluntarily chosen to not work since on about November 7, 2018, for reasons unrelated to the COVID-19 pandemic and did not attempt to work during the applicable periods." [Doc. 1 at 3, 6]. These false submissions allegedly resulted in her unlawful receipt of $17,811 of PUA benefits and federal supplements.  [*Id.* at 4].

Following her arraignment on these charges, Defendant Henderson moved to dismiss the Indictment "on the grounds that the federal prosecution is based on conduct that occurred entirely within a state administrative program and lacks a sufficient federal nexus." [Doc. 21 at 1]. In the alternative, she requests "limited discovery" and an evidentiary hearing based on her contention that the Indictment is the product of selective prosecution. [*Id.* at 1, 3]. These requested disclosures are warranted, she avers, because unlike other PUA applicants who submitted "comparable alleged misstatements" to the GDOL and had their cases resolved

administratively or in state court, she was selected for federal prosecution "despite the state-level nature of the conduct." [Doc. 21 at 3].

## II. LEGAL AUTHORITY AND ANALYSIS

Ms. Henderson moves to dismiss the Indictment based on her assertion that this Court lacks subject matter jurisdiction because "all alleged statements were made to GDOL, a state agency, with no direct federal nexus." [Doc. 21 at 2]. Because no federal agency or officer was directly misled by statements she allegedly made, she contends, "[f]ederalizing such conduct absent direct interaction with federal agents risks usurping state authority and expanding federal jurisdiction beyond its constitutional limits." [Doc. 22 at 3]. And because "federal criminal law cannot supplant state enforcement absent explicit congressional authorization," she argues, the Indictment raises "serious questions regarding jurisdictional authority" and federalism. [Doc. 21 at 3; Doc. 22 at 1-2]. [1]

---

[1]   In her reply brief, Defendant Henderson raises issues related to "materiality." She argues - for the first time – that the Indictment is insufficient because it failed to establish materiality as required by law, "leaving Counts Three through Twelve legally vulnerable and fatally defective." [Doc. 27 at 3]. She makes a similar argument regarding Counts One and Two, asserting that the Indictment must include "jurisdictional and materiality elements for §1001." [*Id.*]. Because she failed to raise arguments regarding "materiality" in her initial motion and memorandum, they will not be considered by this Court. *United States v. Coy*, 19 F.3d 629, 632, n.7 (11th Cir. 1994) (per curiam) (noting arguments made for the first time in a reply brief were not properly before the court*)*; *United States v. Oakley*, 744 F.2d 1553 (11th Cir. 1984) (same).

The Government contends that these claims are meritless because the Eleventh Circuit, in *United States v. Herring*, 916 F.2d 1543, 1548 (11th Cir. 1990), has previously rejected Defendant's reasoning when it concluded: "Section 1001 is the proper vehicle for prosecuting individuals who make false statements on applications for state unemployment benefits." [Doc. 26 at 3-4]. It also argues that Defendant Henderson's claim that the false statements were not made in a matter within the jurisdiction of a federal agency is undermined by the facts presented in the Indictment. Specifically, it explains that the PUA is a program created to provide federally-funded unemployed benefits and that even though the GDOL administers the programs, "the United States Department of Labor provide[s] oversight and federal-level administration of the programs." [*Id.* at 3; Doc. 1 at 2]. These factual allegations, the Government continues, belie Defendant's contention that the offenses lack a federal nexus. This Court agrees.

Subject matter jurisdiction, which Congress bestows on the lower federal courts by statute, "defines the court's authority to hear a given type of case." *United States v. Morton,* 467 U.S. 822, 828 (1984); *United States v. Brown*, 752 F.3d 1344, 1348 (11th Cir. 2014). Congress has granted federal district courts original jurisdiction "of all offenses against the laws of the United States." *Brown*, 752 F.3d at 1348; 18 U.S.C. § 3231. "[S]o long as the indictment charges the defendant with violating a

valid federal statute as enacted in the United States Code, it alleges 'an offense against the laws of the United States,' and, thereby, invokes the district court's subject-matter jurisdiction." *Brown*, 752 F.3d at 1354. Consequently, if an indictment alleges a violation of a valid federal statute, this Court has subject matter jurisdiction of that case. *United States v. Grimon*, 923 F.3d 1302, 1305 (11th Cir. 2019); See also, *Alikhani v. United States*, 200 F.3d 732, 734 (11th Cir. 2000) ("Congress has provided the district courts with jurisdiction - "exclusive of the courts of the States" - of "all offenses against the laws of the United States.""").

The statute upon which Defendant Henderson bases her jurisdictional challenge provides that "[w]hoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willingly falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than 5 years, or both." (18 U.S.C. § 1001).  This offense consists of five elements: "(1) statement, (2) falsity, (3) materiality, (4) specific intent, and (5) agency jurisdiction." *United States v. Lawson,* 809 F.2d 1514, 1517 (11th Cir.1987) (citing, *United States v.*

*Lange,* 528 F.2d 1280 (5th Cir. 1978)).[2] The Supreme Court has stated that the term "jurisdiction" should not be narrowly or technically defined for purposes of § 1001. *United States v. Rogers*, 466 U.S. 475, 480 (1984). The Eleventh Circuit recognizes federal jurisdiction in this context as well, noting that under §1001 "the false statement does not need to be presented directly to a federal agency; rather, it is sufficient that the false statement is presented to a state agency, which in turn presents it to a federal agency." *Herring*, 916 F.2d at 1547. Moreover, a state agency's use of federal funds is generally sufficient to establish jurisdiction under section 1001. *United States v. Suggs*, 755 F.2d 1538, 1542 (11th Cir. 1985).

As previously stated, Ms. Henderson has been charged in Counts Three - Twelve with violating §1001 (within the Northern District of Georgia) by knowingly submitting false statements "in a matter within the jurisdiction of the executive branch of the United States on internet certifications to obtain funds administered by the U.S. Department of Labor;" federal criminal offenses that clearly invoke this Court's subject matter jurisdiction. Thus, the undersigned **RECOMMENDS** that the Motion to Dismiss the Indictment [Doc. 21] be **DENIED.**

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions rendered by the Fifth Circuit before October 1, 1981

Defendant Henderson also moves for an order directing the Government to provide discovery "into GDOL referral procedures, DOJ PUA prosecution guidance, and criteria for selecting this case for federal charges" to substantiate her assertion that she's the victim of selective prosecution. [Doc. 22 at 3]. In her reply brief, she claims that eight State of Georgia employees charged in state court with similar offenses were solely prosecuted in state court. [Doc. 27 at 4-5]. Because these "similarly situated individuals were not federally prosecuted," she maintains, an evidentiary hearing "to explore potential selective prosecution" is warranted. [*Id*. at 5].

The Government disagrees, arguing that Ms. Henderson has not established discovery is warranted in this case and that her request for an evidentiary hearing should be denied. [Doc. 26 at 4-5]. First, it insists that she has failed to make a *prima facia* case of selective prosecution, a prerequisite that triggers production of discovery in this context. [*Id*. at 4]. It also empathizes that "the Attorney General and United States Attorneys retain 'broad discretion' to enforce the nation's criminal laws" and that "a presumption of regularity supports their prosecutorial decisions, and in the absence of clear evidence to the contrary, courts presume that they properly discharged their official duties." [*Id*. at 4; citing, *United States v. Armstrong, 517 U.S. 456* (1996) (quotations omitted)]. Because Defendant "has

made no evidentiary showing at all" in support her allegation, nor has she identified any similarly situated individuals who received disparate treatment, the Government contends, it is not required to produce the evidence she demands. [Doc. 26 at 5].[3]

The Government's arguments are persuasive. The Eleventh Circuit has acknowledged federal prosecutors' "broad discretion" in enforcing criminal law and a "presumption of regularity" attaches to those prosecutorial decisions. *United States v. Smith*, 231 F. 3d 800, 807 (11th Cir. 2000). Notwithstanding this discretion, prosecutors' decisions are subject to "constitutional constraints." *Id.* "One of these constraints, imposed by the equal protection component of the Due Process Clause of the Fifth Amendment, is that the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." *Armstrong,* 517 U.S. at 464 (quoting, *Oyler v. Boles,* 368 U.S. 448, 456 (1962)). Because of this presumption of regularity, a defendant seeking to establish a claim of selective prosecution in violation of the Constitution carries a "demanding" burden. *Smith*, 231 F.3d at 987 (quoting, *Armstrong,* 517 U.S. at 463).

---

[3]   The Government noted that Defendant Henderson failed to identify comparators in her initial motion and memorandum. [Doc. 26 at 5].  In her reply brief, she posited eight State of Georgia employees as similarly situated individuals in support of her constitutional challenge. Because her rebuttal is directly related to her initial claim, this Court will consider these proffered comparators.

"[T]o dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present clear evidence to the contrary." *Armstrong*, 517 U.S. at 465. Furthermore, discovery on a selective prosecution claim is subject to "a correspondingly rigorous standard." *Armstrong*, 517 U.S. at 468. It requires Defendant Henderson to produce "some evidence tending to show the existence of the essential elements" of a selective prosecution claim - discriminatory effect and discriminatory purpose. *United States v. Jordan*, 635 F.3d 1181, 1188–89 (11th Cir. 2011)(quoting, *Armstrong*, 517 U.S. at 468). Thus, she must show "that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." *Smith*, 231 F.3d at 808 (quoting, *Armstrong*, 517 U.S. at 465); *United States v. Cannon*, 987 F.3d 924, 937 (11th Cir. 2021). To establish discriminatory purpose, Ms. Henderson must show the decisionmaker "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Jordan*, 635 F.3d at 1188 (quoting, *Wayte v. United States*, 470 U.S. 598, 610 (1985)).

Additionally, the Defendant must establish that "similarly situated individuals were not prosecuted." *Smith,* 231 F.3d at 809. A "similarly situated" person is one "who engaged in the same type of conduct, which means that the comparator

committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant." *Smith, 231* F. 3d at 810.

As the Government correctly asserts, Defendant Henderson fails to offer supporting evidence establishing disparate treatment or "that her fraud on the federally funded emergency programs was merely a 'state-level' matter." [Doc. 26 at 5]. Defendant's factual omissions prevent her from establishing discriminatory effect because she had not demonstrated that similarly situated defendants could have been prosecuted but were not. See, *Armstrong*, 517 U.S. at 470. Even though she claims other state employees charged with committing similar offenses were not indicted by a federal grand jury, her bald assertions do not specify the factual circumstances that led to those state prosecutions. Rather than presenting the factual bases underlying the state charges, she merely makes passing references in two footnotes to a press release issued by the Attorney General of Georgia and a state court opinion. [Doc. 27 at 4-5]. "[A]ddressing legal arguments in footnotes is an incorrect method to present substantive arguments on the merits or otherwise request relief from the Court." *Sony Music Ent. v. Vital Pharms., Inc.*, 2022 WL

4771858, at *13 (S.D. Fla. Sept. 14, 2022). Furthermore, courts will not consider arguments which are "raise[d] [ ] only in a footnote in a perfunctory and conclusory manner." *Nat'l Mining Ass'n v. United Steel Workers*, 985 F.3d 1309, 1327 (11th Cir. 2021); *Club Madonna, Inc. v. City of Miami Beach*, 2023 WL 3534077, at *8 (S.D. Fla. May 18, 2023)( internal citations omitted). Absent "a credible showing of different treatment of similarly situated persons," Ms. Henderson's proffered evidence does not establish a *prima facia* case of disparate treatment. See, *Armstrong*, 517 U.S. at 471.

The Defendant has also failed to prove the Government's policy was motivated by a discriminatory purpose. As explained above, she must establish that the Government "selected or reaffirmed a particular course of action at least in part 'because of' not merely 'in spite of,' its adverse effects upon an identifiable group." *Jordan*, 635 F.3d at 1188-89 (quoting, *Wayte,* 470 U.S. at 610). However, there is no evidence to suggest that she was unlawfully targeted for prosecution, nor that prosecutors in this District utilized improper methods to secure the Indictment. As a result, she is unable to establish that her Indictment is the product of discriminatory intent or that an evidentiary hearing is required "to explore *potential* selective prosecution." [Doc. 27 at 5; emphasis added]; See, *Smith*, 231 F.3d at 809 (ruling that "the mere possibility of future prosecutions, without more, is not a sufficient

12

basis upon which to find that the requisite discriminatory effect or selectivity showing has not been clearly proven."). Because Defendant Henderson is unable to meet her burden of proof regarding either prong, her requests for discovery and an evidentiary hearing should be **DENIED**.   See, *Jordan*, 635 F.3d at 1189 (finding defendant was not entitled to an evidentiary hearing or discovery because he failed to present evidence tending to establish he was subjected to selective prosecution) and *United States v. Silien,* 825 F.2d 320, 322 (11th Cir.1987)(holding that in order to obtain an evidentiary hearing on a selective prosecution claim, "the defendant must present facts 'sufficient to create a reasonable doubt about the constitutionality of a prosecution.' ") (internal citation omitted).

## CONCLUSION

Based on the reasons stated above, the undersigned **RECOMMENDS** that the Motion to Dismiss Indictment [Doc. 21] be **DENIED.**  Further, because Defendant has failed to present a *prima facia* case in support of her Selective Prosecution claim, her requests for limited discovery and an evidentiary hearing should be **DENIED.** Having not been advised of any impediments to the scheduling of a trial, this case is **CERTIFIED READY FOR TRIAL.**

**IT IS SO RECOMMENDED** on this 16th day of April, 2026.

REGINA D. CANNON
United States Magistrate Judge